Matter of L.X.V. (2026 NY Slip Op 01749)

Matter of L.X.V.

2026 NY Slip Op 01749

Decided on March 24, 2026

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: March 24, 2026

Before: Manzanet-Daniels, J.P., Shulman, Rodriguez, Higgitt, Rosado, JJ.

Docket No. B-06217/21|Appeal No. 6172-6172A|Case No. 2024-07382|

[*1]In the Matter of L.X.V., a Child Under the Age of Eighteen Years, etc., Rising Ground, Petitioner-Respondent, L.J., Respondent-Appellant, J.V., Respondent-Appellant.

Larry S. Bachner, New York, for J.V., appellant.
Neighborhood Defender Service of Harlem, New York (Michael Weinstein of counsel), for L.J., appellant.
John R. Eyerman, New York, for Rising Ground, respondent.
Lawyers for Children, Inc., New York (Shirim Nothenberg of counsel), attorney for the child.

Order of disposition, Family Court, New York County (Valerie A. Pels, J.), entered on or about November 26, 2024, which, upon a finding of permanent neglect, terminated respondent father's and respondent mother's parental rights to the subject child and transferred custody and guardianship of the child to petitioner agency and the Commissioner of the Administration for Children's Services of the City of New York for the purpose of adoption, unanimously affirmed, without costs. Appeal from fact-finding order, same court and Justice, entered on or about December 13, 2023, unanimously dismissed, without costs, as subsumed in the appeal from the order of disposition.
Clear and convincing evidence supports Family Court's finding that respondents permanently neglected the child (Social Services Law § 384-b[7][a]). The agency's progress notes and the testimony of its case planners establish that it made diligent efforts to encourage and strengthen respondents' relationship with the child by, among other things, scheduling visitation, referring respondents to parenting programs and mental health services, contacting respondents by telephone and sending letters to their last known address, providing respondents with MetroCards to attend visits with the child, scheduling meetings with respondents to discuss their progress with their service plan, and encouraging them to engage in services and to consistently visit the child (see Social Services Law § 384-b[7][f]; Matter of Hailey ZZ. [Ricky ZZ.], 19 NY3d 422, 429 [2012]; Matter of Elizabeth E.R.T. [Alicia T.], 168 AD3d 448, 449 [1st Dept 2019]; Matter of Brian T. [Jeannette F.], 121 AD3d 500, 500 [1st Dept 2014]). Despite the agency's diligent efforts, however, respondents failed to plan for the child's future.
The record shows that the father refused to comply with the agency's referrals for mental health care, anger management, and the Fatherhood Program (see Matter of Georges P. [Yvelisse A.], 103 AD3d 570, 570 [1st Dept 2013], lv denied 21 NY3d 855 [2013]). Furthermore, the father's testimony at the fact-finding hearing establishes that between March 2020 and December 2021, he did not appear for any visits with the child at the agency and refused to have contact with the agency (see Matter of Jonathan Jose T., 44 AD3d 508, 509 [1st Dept 2007]). Although the father completed a parenting skills class and participated in dyadic therapy, he never gained insight into the reasons the child had been placed into foster care (see Matter of Emily Jane Star R. [Evelyn R.], 117 AD3d 646, 647 [1st Dept 2014]).
The father's assertion that the agency failed to plead or prove that he was physically and financially capable of engaging with the agency is belied by the record. The petition makes that allegation, and the father testified regarding his stable employment and financial condition. In addition, Family Court's 21-page fact-finding order and the 26-page decision after the dispositional hearing amply states the facts that it deemed essential to its determination (see CPLR 4213[b]).
As to the mother's contentions, we find that she failed to plan for the child's future despite completing some services, as she failed to visit the child consistently or gain insight into the reasons for the child's placement into foster care (see Matter of Brian T., 121 AD3d at 501). Despite being offered visits twice each week, the mother visited the child at the agency only nine times in 2020 and once in 2021. Moreover, the mother's refusal to take responsibility for the child's broken arm despite Family Court's finding, which this Court affirmed, supports Family Court's determination that she substantially and continuously or repeatedly failed to plan for the child's future (Matter of L.V. [L.J.], 228 AD3d 562, 562-563 [1st Dept 2024]; see Matter of Naisha J.V. [John V.], 94 AD3d 416, 417 [1st Dept 2012] ).
A preponderance of the evidence supports Family Court's determination that it was in the child's best interests to terminate respondents' parental rights and free the child for adoption (see Matter of Raul R. [III] [Raul R.—Cinthia R.], 199 AD3d 594, 595 [1st Dept 2021], lv denied 38 NY3d 944 [2022]). Respondents failed over an extended period to comply with their respective service plans — for example, by refusing to allow the agency to conduct home visits and failing to regularly attend the supervised visits arranged by the agency (see Matter of Serenity H. [Shantell F.], 200 AD3d 452, 452-453 [1st Dept 2021]). At the time of the dispositional hearing, the child had lived for several years in a nonkinship, pre-adoptive foster home, where the child's needs were being met, and the foster parent wishes to adopt the child (see id. at 453).
Family Court properly declined to enter a suspended judgment, as it was not warranted under the circumstances (see Family Ct Act § 633). In light of the fact that the child has spent most of their life in foster care and is entitled to permanence through adoption, and because respondents failed to demonstrate any meaningful progress toward reunification, the record does not support granting them additional time to demonstrate that they can be fit parents (see Matter of "No Given Name" O. [Adele O.], 209 AD3d 443, 444 [1st Dept 2022]).
Family Court providently exercised its discretion in denying the mother's motion for unsupervised visitation with the child during the pendency of the underlying permanent neglect proceeding, as there is a sound and substantial basis in the record for the conclusion that unsupervised visitation would not have been in the child's best interests (see Family Ct Act § 1030[c]). As the record demonstrates, the child was found to have a fractured arm as the result of nonaccidental trauma that would not ordinarily be sustained by the then-five-month-old child except by reason of the mother's acts or omissions (see Matter of Daniel O. [Jaquan O.], 141 AD3d 434, 435 [1st Dept 2016]). In addition, although the mother's fact-finding testimony established that her anxiety was so extreme that it prevented her from visiting the child at the agency between May 21, 2021, and December 6, 2021, she presented no proof that she was addressing her anxiety so that she would have been able to properly care for the child during unsupervised visitation.
Finally, the agency properly filed the underlying permanent neglect petition against the father even though it was filed around three weeks after the beginning of a fact-finding hearing on the article 10 abuse petition against him (see Social Services Law § 384-b[3][l]). The record shows that the agency had been providing the child with foster care services for about 37 months when the permanent neglect petition was filed, and the agency was therefore required to file the neglect petition because none of the exceptions set forth in Social Services Law § 384-b(3)(l) applied. Additionally, contrary to the father's assertions, dismissal of the abuse petition against him did not extinguish Family Court's subject matter jurisdiction, as the father consented to the child's continued foster care placement and did not seek the child's return until after a finding of permanent neglect was entered against him.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: March 24, 2026